UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

MICHELLE KALINKINA,

                Plaintiff,

  -against-

MARTINO CARTIER ENTERPRISES, LLC,
MARTINO CARTIER SALON WASHINGTON
TWP LLC, MARTINO CARTIER, and
BEARSHEART LLC,

                Defendants.

------------------------------------X

16 Civ. 8331 (RWS)
OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6/20/17

A P P E A R A N C E S:

    Attorneys for Plaintiff

    BRUCE MONTAGUE & PARTNERS
    212-45 26th Avenue
    Bayside, NY 11360
    By:  Craig I. Gardy, Esq.

    Attorney for Defendants

    LAW OFFICES OF TOBIAS & KUHN
    100 William Street, Suite 920
    New York, NY 10038
    By:  Gail Mota, Esq.

    WHITE FLEISCHNER & FINO LLP
    1527 Franklin Avenue
    Mineola, NY 11501
    By:  Wendy K. Cardali, Esq.

**Sweet, D.J.**

Defendants Martino Cartier ("Cartier"), Martino Cartier Enterprises, LLC ("Cartier Enterprises"), Martino Cartier Salon Washington TWP LLC ("Cartier Salon"), and Bersheart LLC ("Bersheart") (collectively, the "Defendants") have moved to dismiss the First Amended Complaint of plaintiff Michelle Kalinkina ("Kalinkina" or the "Plaintiff") pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth below, the motion is granted in part and denied in part.

I. **Prior Proceedings**

Kalinkina instituted this action on October 26, 2016 and filed her First Amended Complaint ("FAC") on January 20, 2017, alleging negligence and gross negligence against the Defendants. The instant motion was filed on January 23, 2017, and the motion was marked fully submitted on March 16, 2017.

## II. The Facts

The facts as set forth below are drawn from the Plaintiff's FAC. They are taken as true for purposes of the motion to dismiss.

Plaintiff, a professional model, attended a public haircut and styling demonstration at the Jacob Javits Convention Center (the "Javits Center") on March 7, 2016. FAC ¶¶ 15-17. Cartier was cutting her hair, and he was doing so on behalf of himself individually as well as in the course and scope of his employment with Cartier Enterprises, Cartier Salon, and Bersheart. *Id.* ¶¶ 18-26. During the demonstration, Cartier cut Plaintiff's neck with scissors. *Id.* ¶ 28. As a result, Kalinkina sustained physical injury, pain, and scarring. *Id.* ¶ 28, 31.

## III. The Applicable Standards

The Rule 12(b)(6) standard requires that a complaint plead sufficient facts to state a claim upon which relief can be granted. *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). On a motion to dismiss under Fed. R. Civ. P 12(b)(6), all factual allegations

2

in the complaint are accepted as true, and all reasonable inferences are drawn in the plaintiff's favor. *Littlejohn v. City of N.Y.*, 795 F.3d 297, 306 (2d Cir. 2015); *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993). However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions." *Twombly*, 550 U.S. at 555 (quotation marks omitted). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 663 (quoting *Twombly*, 550 U.S. at 570).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). In other words, the factual allegations must "possess enough heft to show that the pleader is entitled to relief." *Twombly*, 550 U.S. at 557 (internal quotation marks omitted).

Additionally, while "a plaintiff may plead facts alleged upon information and belief 'where the belief is based on factual information that makes the inference of culpability plausible,' such allegations must be 'accompanied by a statement

3

of the facts upon which the belief is founded.'" *Munoz-Nagel v. Guess, Inc.*, No. 12-1312, 2013 WL 1809772, at *3 (S.D.N.Y. Apr. 30, 2013) (quoting *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010)) and *Prince v. Madison Square Garden*, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006); *see also Williams v. Calderoni*, No. 11-3020, 2012 WL 691832, *7 (S.D.N.Y. Mar. 1, 2012). The pleadings, however, "must contain something more than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Twombly*, 550 U.S. at 555 (quoting 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1216 (3d ed. 2004)).

### IV. The Motion to Dismiss Defendants Cartier Enterprises and Cartier Salon is Granted

Cartier, Cartier Enterprises, Cartier Salon, and Bersheart have moved to dismiss the FAC as against defendants Cartier Enterprises and Cartier Salon, arguing that these entities had no involvement in the action. They state that the facts at issue involve Cartier, who was performing haircutting exhibitions at the International Beauty Show at the time of the accident "within the permission of/and or upon the authority of" defendant Bersheart, and that Cartier Enterprises – a holding company for intellectual property rights – and Cartier Salon – a

hair salon in New Jersey - had no presence at the International Beauty Show. There being no opposition by the Plaintiff to dismissal of these two defendants, the FAC is dismissed as to Cartier Enterprises and Cartier Salon.

**V.    The Motion to Dismiss the Claim for Negligence is Denied**

The Defendants argue that the Plaintiff released her right to make any claim for injuries sustained as a result of the alleged incident. This is the only argument they put forth as to why the Plaintiff's negligence claim in the FAC should be dismissed.

Hair Model Express Inc. ("Hair Model Express") provided models to Bersheart for the haircutting exhibition taking place at the International Beauty Show. *See* Decl. of Richard Schoonover at ¶ 4. Kalinkina was one such model. Prior to the March 7, 2016 event, Hair Model Express provided Bersheart a release signed by Kalinkina that applied on the date of the specific haircutting event (the "Release"). The Release provides as follows:

> I am providing modeling services for International Designs Corp. and/or Bersheart LLC, their parents and

subsidiaries, affiliates, and partners, in one or more modeling sessions.

I authorize and license International Designs Corp. and/or Bersheart LLC, their parents and subsidiaries, affiliates, partners, licensees, representatives, and all persons or corporations acting with their permission or upon their authority (collectively "International Designs Corp."), to use my name, voice, photograph, likeness, video, appearance and performance (the "Material") arising from any past or future modeling sessions in connection with the manufacturing, advertising, promotion, distribution and sale of International Designs Corp. products and services, and in connection with any other related activities. International Designs Corp. may edit and modify the Material, and may incorporate and use all or any part of the Material in video, audio, online and print ads, still photographs, catalogs, packaging and package inserts, and all other media (the "Advertising"), and may reproduce, exhibit, broadcast, transmit and distribute Advertising containing the Material by any and all means, media and channels of distribution.

\* \* \*

I hereby release International Design Corp. and/or Bersheart LLC, their parents and subsidiaries, affiliates, partners, licensees, representatives, and all persons acting with their permission or upon their authority, from all liability in connection with the Material, including without limitation any accident or unforeseen incident resulting from or occurring during any modeling session (including but not limited to, accidents during model hair cutting, preparation, and during demonstrations).

Declaration of Wendy K. Cardali, Ex. F at p. 2.

Kalinkina does not dispute that she signed the Release, that the Release was active on the date of the

accident, or that both Cartier and Bersheart are covered by the Release. Rather, she contends that the terms of the Release do not specifically bar a suit for personal injuries negligently caused by the Defendants. Defendants have argued that the terms of the Release exculpated them from any liability here, and that the Release need not use the words "negligence," "personal injury," or "bodily injury" in order to preclude this action.

Exculpatory agreements are subject to close judicial scrutiny and a general rule of strict construction. Because the law "frowns upon contracts intended to exculpate a party from the consequences of his own negligence," if the "intention of the parties is [not] expressed in unmistakable language, an exculpatory clause will not be deemed to insulate a party from liability for his own negligent acts." *Gross v. Sweet*, 400 N.E.2d 306, 309 (N.Y. 1979). This rule of strict construction is not applicable "to exoneration clauses in indemnification agreements, which are usually 'negotiated at arm's length between . . . sophisticated business entities' and which can be viewed as merely allocating the risk of liability to third-parties between themselves." *Hoheusle v. KLM Royal Dutch Airlines*, No. CV 93-0054, 1995 WL 228644, at *1 (E.D.N.Y. Apr. 5, 1995) (quoting *Gross*, 400 N.E.2d at 368). Here, "we are not

dealing with an indemnification agreement, but rather with an exculpatory agreement which has the potential of depriving an injured plaintiff of a remedy." *Geise v. Niagara Cnty.*, 117 Misc. 2d 470, 472 (N.Y. Sup. Ct. 1983). As such, the rule of strict construction applies.

The Defendants are correct that "the word 'negligence' does not have to be specifically used for the courts to give effect to an exculpatory agreement." *Sivaslian v. Rawlins*, 88 A.D.2d 703, 704 (N.Y. 1982). However, "words conveying a similar import must appear." *Id.; see also Gross*, 400 N.E.2d at 309-10 (citing with approval *Theroux v. Kendenburg Racing Association, Inc.*, 50 Misc. 2d 97 (N.Y. Sup. Ct. 1965), *aff'd*, 28 A.D.2d 960, in which "neglect" and "fault" were used). No such language appears in the Release. Rather, like the agreement in *Gross*, the release is in general terms, referring to release "from all liability in connection with the Material, including without limitation any accident or unforeseen incident." The language in the Release is insufficient to meet the *Gross* strict construction rule because the term "accident" cannot substitute for "negligence." *See Commercial Union Ins. Co. v. Blue Water Yacht Club Ass'n*, 239 F. Supp. 2d 316, 320-21 (E.D.N.Y. 2003) ("The instant agreement contains no language that conveys a

similar meaning to disclaim negligence without using that word, such as that [the defendant] is not responsible for damages caused by its own fault or when it fails to use reasonable care.").

Defendants argue that the breadth of the Release's language is exactly why it applies to this action. *See* Reply Br. at 3. However, "agreements to release parties from 'any and all responsibility or liability of any nature whatsoever' will not bar claims based on ordinary negligence." *Delaney v. City of Mount Vernon*, 28 A.D.3d 416, 417 (N.Y. 2006) (internal citations omitted); *see also Roane v. Greenwich Swim Comm.*, 330 F. Supp. 2d 306, 322 (S.D.N.Y. 2004) ("[T]he pertinent language of the form — that the participant would 'waive and release any and all rights and claims for damages I may have against any and all race sponsors . . . for any and all injuries suffered by me in said event' — is strikingly familiar to other waiver forms that have not been found exculpatory in prior cases."); *Geise v. Niagara Cnty.*, 117 Misc. 2d 470, 472 (N.Y. Sup. Ct. 1983) (finding that a similar, broadly-worded release did not meet the strict construction standard of *Gross*). Furthermore, there is no indication here that Plaintiff was "aware of or intended to accept any enhanced exposure to injury arising from negligence

9

of the [D]efendants." *Roane*, 330 F. Supp. at 322; *Applbaum ex rel. Applbaum v. Golden Acres Farm & Ranch*, 333 F. Supp. 2d 31, 35 (N.D.N.Y. 2004) ("Assuming that the release [the plaintiff] signed alerted him of the inherent dangers of horseback riding 'and that he entered into the sport with apprehension of the risks, it does not follow that he was aware of, much less intended to accept, any *enhanced* exposure to injury occasioned by the carelessness of the very persons on which he depended for his safety.'") (italics in original) (quoting *Gross*, 400 N.E.2d at 311).

Having found that the necessary "plain[] and precise[]" language regarding the Defendants' exemption of itself from liability for its own negligence is lacking, *see Gross*, 400 N.E.2d at 309, and because any ambiguities must be resolved against the party who drafted the agreement, *see Geise*, 117 Misc. 2d at 473, the Court concludes that the Release does not preclude this action for ordinary negligence. The motion to dismiss Plaintiff's negligence claim in the FAC is denied.

## VI. The Motion to Dismiss the Claim for Gross Negligence is Denied

Plaintiff's FAC differs from the original complaint primarily in the addition of a claim of gross negligence. The Release is not applicable to this claim; while an exculpatory clause "may shield [a] defendant from liability for ordinary negligence, it will not protect the defendant from liability for gross negligence." *Rice v. Harley Davidson Inc.*, No. 1:04CV0481NAMDRH, 2005 WL 1843250, at *3 (N.D.N.Y. Aug. 1, 2005); *see also Kalisch-Jarcho v. City of NY*, 58 N.Y.2d 377 (1983) ("[A]n exculpatory agreement . . . will not apply to exemption of willful or grossly negligent acts.").

The Defendants argue that the Release does apply to Plaintiff's gross negligence claim, citing to multiple cases where New York courts have enforced releases of liability where the parties' conduct did not sufficiently demonstrate gross negligence. *See* Reply Br. at 8. However, the cases to which the Defendants cite take place at the summary judgment stage, where sufficient evidence had been adduced to allow the courts to conclude that the defendants' actions did not rise to the level of gross negligence. *See, e.g., Colnaghi, U.S.A., Ltd. v. Jewelers Prot. Servs., Ltd.*, 611 N.E.2d 282, 284 (N.Y. 1993);

*Lubell v. Samson Moving & Storage, Inc.*, 307 A.D.2d 215, 215-16 (N.Y. App. Div. 1st Dep't 2003); *Ninacci Diamond & Jewelry Co. v. Miller Freeman, Inc.*, 281 A.D.2d 342, 342 (N.Y. App. Div. 1st Dep't 2001). In other words, "[w]hile gross negligence may be found as a matter of law in some limited instances, this is not such a case." *Trump Int'l Hotel & Tower v. Carrier Corp.*, 524 F. Supp. 2d 302, 315 (S.D.N.Y. 2007); *see also Rice*, 2005 WL 1843250, at *3 (denying a motion for summary judgment where "little, if any, discovery has yet taken place" and the plaintiff had made sufficiently allegations to state a cause of action for gross negligence in the complaint).

Here, Plaintiff has alleged that Cartier "evinced a reckless indifference" to her safety. FAC ¶ 35. She alleges that Cartier prevented her from leaving the stage to obtain treatment, that Defendants misinformed her as to the injury, and that Defendants attempted to conceal the injury from her. *Id.* ¶¶ 38-41. For the purposes of a motion to dismiss, Plaintiff has alleged that the Defendants' behavior at least "'smacks' of intentional wrongdoing" or "evinces a reckless disregard for the rights of others." *Alley Sports Bar, LLC v. SimplexGrinnell, LP*, 58 F. Supp. 3d 280, 289 (W.D.N.Y. 2014) (quoting *Colnaghi*, 611

N.E.2d at 284). The motion to dismiss Plaintiff's gross negligence cause of action is therefore denied.

**VII.   Conclusion**

Based upon the conclusions set forth above, the motion to dismiss defendants Cartier Enterprises and Cartier Salon is granted, and the motion to dismiss the Plaintiff's negligence and gross negligence claims is denied.

It is so ordered.

**New York, NY**
**June 20, 2017**

_____
ROBERT W. SWEET
U.S.D.J.